UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| VESTED HOUSING GROUP, LLC et al., | ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | 2:13-cv-01643-RCJ-PAL |
| PRINCIPAL REAL ESTATE INVESTORS, LLC et al., | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This case arises out of a real estate development agreement that collapsed when the market crashed in 2008. Pending before the Court is a Motion to Dismiss (ECF No. 11). For the reasons given herein, the Court grants the motion.

I.      FACTS AND PROCEDURAL HISTORY

On June 29, 2007, Plaintiff Vested Housing Group, LLC ("VHG") entered into a Purchase and Sale Agreement (the "Agreement") with Defendant Henderson Apartment Venture, LLC ("HAV"), with Defendant Principal Real Estate Investors, LLC ("PREI") signing the Agreement on behalf of HAV. (*See* Compl. ¶ 9, Sept. 9, 2013, ECF No. 1-1).[1] Under the Agreement, HAV was to purchase from VHG Henderson Lofts Devco, LLC ("HLD"), an

---

[1] HAV and PREI are Delaware LLCs. (*Id.* ¶¶ 3–4).

Arizona LLC whose creator and sole member was VHG. (*Id.* ¶¶ 1–2, 10). HLD's sole asset was to be real property in Henderson, Nevada (the "Property") that HLD would develop, which HLD began to do. (*Id.*). VHG was to sell the Property to HLD and convey its ownership interest in HLD to HAV in exchange for money. (*See id.* ¶ 11). Under the Agreement, HAV warranted that it was a valid Iowa corporation in good standing, that it was not subject to any dissolution or liquidation proceedings, and that it was authorized to enter into the Agreement. (*Id.* ¶ 12). The Agreement is completely integrated and contains a choice-of-law provision in favor of Nevada law. (*See id.* ¶¶ 13–14). On June 28, 2007, VHG assigned its interest in the Agreement to HLD. (*Id.* ¶¶ 9, 15).[2] HLD and HAV later entered into the First Amendment to Agreement (the "FAA") on June 10, 2008. (*Id.* ¶ 17).

HLD financed its purchase of the Property from VHG via a July 2, 2007 Loan Purchase Agreement (the "LPA") with non-party Wachovia Bank, N.A. (*See id.* ¶ 16). Wachovia was the lender, HLD was the borrower, and Defendant Principal Life Insurance Co. ("PLIC") was the repurchase guarantor "on behalf [of]" Defendant Principal U.S. Property Separate Account ("PUSPSA"), which appears to be some kind of single-purpose account into which PLIC would place the Property if required to repurchase it. (*See id.*). Wachovia agreed to loan $13,100,000 to HLD to purchase the property in Henderson, Wachovia retained a deed of trust in its favor, and PLIC guaranteed the loan. (*See id.*).

However, unbeknownst to Plaintiffs VHG and HLD, HAV was not in fact a valid Iowa corporation in good standing as warranted in the Agreement when PREI signed the Agreement with VHG on HAV's behalf, and HAV in fact first filed its certificate of LLC formation with the Delaware Secretary of State on October 14, 2008. (*See id.* ¶ 18). HLD defaulted in November 2008, and PLIC was therefore required under the LPA to repurchase the loan from Wachovia,

---

[2]VHG is therefore alleged to have assigned its interest in the June 29, 2007 Agreement to HLD on June 28, 2007, the day before VHG entered into the Agreement.

which it did. (*See id.* ¶ 20). On August 7, 2009, HAV foreclosed after PLIC assigned it the Property. (*See id.*).[3]

On August 20, 2008, HAV sued non-party Andrew Miller, the sole manager of VHG, in state court in Clark County, Nevada, for breach of contract, unjust enrichment, and declaratory judgment based upon the Agreement and the FAA, but HAV did not join VHG or HLD as defendants. (*See id.* ¶¶ 21–23). Miller removed the case to another court of this District on September 21, 2009. *See Henderson Apartment Venture, LLC v. Miller*, No. 2:09-cv-01849-RCJ-PAL. The parties filed cross motions for summary judgment, which Judge McKibben denied without prejudice before he later recused himself. The case was reassigned to this Court, and the Court held reargumentation on the cross motions for summary judgment. The Court granted Miller's defensive motion, ruling that HAV was neither a *de jure* nor a *de facto* corporation under Delaware law when it purported to enter into the Agreement, that the doctrine of corporation by estoppel did not apply, that there was no contract with any promoter for the later-formed corporate entity to ratify, and that there was therefore no contract under Nevada law. The Court ruled that there was no unjust enrichment claim against Miller because if anyone it was VHG and/or HLD who had been unjustly enriched, not Miller himself, and HAV had made no attempt to pierce the corporate veil. HAV did not appeal.

VHG alleges that it was damaged by foregoing other opportunities to sell the Property apart from the Agreement with HAV, such as an opportunity to sell the property to non-party Nevada West Development for $1,400,000 in April 2007, as well as by funding the development of the property (before HLD's default) by over $800,000. (*See id.* ¶¶ 32–33, 39). Plaintiffs allege they would never have entered into the agreement had they known that HAV did not exist when the Agreement was signed. (*See id.* ¶ 38).

---

[3]PLIC, an Iowa corporation, is the managing member of HAV. (*See id.* ¶ 5).

1    Plaintiffs VHG and HLD sued Defendants PREI, HAV, PLIC, and PUSPSA in state court on five causes of action: (1) civil conspiracy; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) interference with prospective economic advantage; and (5) unjust enrichment. Defendants removed and have now moved to dismiss for failure to state a claim generally and for failure to plead fraud with particularity.

**II.     LEGAL STANDARDS**

    **A.     Rules 8(a) and 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.     Rule 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

The Courts of Appeals are split as to whether the heightened pleading standard of Rule 9(b) applies to state law claims of negligent misrepresentation, as well. *Compare, e.g., CNH Am. LLC v. Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am.*, 645 F.3d 785, 794 (6th Cir. 2011) (no), *with, e.g., Trooien v. Mansour*, 608 F.3d 1020, 1028 & n.3 (8th Cir. 2010) (yes). The Ninth Circuit has not declared any *per se* rule as to negligent misrepresentation claims under state law. It has ruled that Rule 9(b) applies to *any* state law cause of action where fraud is an essential element of the claim, but:

> [i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b). . . .
>
> In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.

*Vess*, 317 F.3d at 1103–04. The *Vess* court implied that claims of misrepresentation based upon negligence or strict liability should survive a Rule (9b) motion. *See id.* at 1105 (quoting *Carlon v. Thaman* (*In re NationsMart Corp. Sec. Litig.*), 130 F.3d 309, 315 (8th Cir. 1997)).

///

## III. ANALYSIS

Defendants ask the Court to dismiss, noting that the gravamen of the Complaint is that HAV's alleged misrepresentation as to its corporate viability at the time it entered into the Agreement with VHG caused harm to VHG and HLD. The Court agrees with Defendants that Plaintiffs have not sufficiently alleged how the failure of HAV to timely incorporate caused any of the damages complained of. It is clear to the Court, as is often the case, that the cause of the losses here (on all sides) was the real estate market crash. That is not to say that HAV (and probably Plaintiffs, as well) cut no corners in relation to the development. During a boom, corner-cutting is endemic. But corner-cutting, as ugly as it may appear when a market collapses and the rocks are overturned during the resulting litigation, almost surely did not cause—and, critically, is not even sufficiently alleged to have caused—the losses complained of, and would never have even come to light had the market continued to thrive and the development been completed. There is absolutely no indication or inference from the allegations in the Complaint that the development would not have been completed profitably for all parties involved had the market not crashed. The failure of HAV to timely incorporate, though dispositive of the breach claims in the previous suit before the Court, is not alleged to have actually caused any damages to Plaintiffs here. HLD in fact admits in the Complaint that the cause of any losses was its own default, which has become a familiar pattern since the market crash: (1) real estate values plummet when the bubble burst; (2) ongoing developments fail when developers default on their loans, either because lending institutions refuse to or are unable to make funding installments, or because developers themselves refuse to continue to fund developments that now have little hope of profit; and (3) all entities that stand to lose money due to the project's failure sue one another in contract and tort in the hopes of mitigating their own losses.

In summary, the Court dismisses all claims, because causation of damages is pled only in conclusory fashion. (*See* Compl. ¶¶ 43, 51, 60, 69, 77). To the extent causation is supported by

factual allegations, Plaintiffs admit causing their own harm by defaulting at a time when HAV had incorporated. (*See id.* ¶ 20). The notion that HAV's promise that it was incorporated as of June 2007, when it in fact did not incorporate until October 2008, caused any loss, when Plaintiffs admit that HLD's default in November 2008 resulted in foreclosure of the Property, is fantastical in the absence of any allegations that HAV's late incorporation in any way caused HLD's own default or otherwise caused the project to fail.

A misrepresentation may strictly be a but-for cause of a loss without being a legal cause of the loss. In order to be legally caused by a misrepresentation, resulting damage must be of the same kind that would foreseeably result from the misrepresentation. Restatement (Second) of Torts § 548A (1977); Dan B. Dobbs, *The Law of Torts* § 483, at 1384 (2000). "This means that the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow." Restatement (Second) of Torts § 548A cmt. b (1977). The loss of the Property via HLD's own default is not plausibly the kind of loss foreseeable from HAV's misrepresentation as to its corporate status. Plaintiffs do not allege any harm to VHG or HLD resulting, for example, from some regulatory action against HAV by the Nevada Secretary of State for operating while not properly incorporated.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 11) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS FURTHER ORDERED that the Motion to Stay Discovery (ECF No. 18) is DENIED as moot.

IT IS SO ORDERED.

Dated this 10th day of January, 2014.

_____
ROBERT C. JONES
United States District Judge